UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KARL E. CHRISTENSEN,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>NANCY A. BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY,[1]<br><br>　　　　Defendant. | No.  2:15-cv-2658 AC<br><br><br>ORDER |

　　　　Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-34, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381-1383f.[2]

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of the Social Security Administration. See https://www.ssa.gov/agency/commissioner.html (last visited by the court on March 8, 2017).  She is therefore substituted as the defendant in this action.  See 42 U.S.C. § 405(g); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant").

[2] DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and who suffer from a mental or physical disability. 42 U.S.C. § 423(a)(1); Bowen v. City of New York, 476 U.S. 467, 470 (1986). SSI is paid to financially needy disabled persons. 42 U.S.C. § 1382(a); Washington State Dept. of Social and Health Services v. Guardianship Estate of

(continued…)

1   For the reasons that follow, the court will grant plaintiff's motion for summary judgment,
2   deny the Commissioner's cross-motion for summary judgment, and remand the matter for further
3   consideration. The Administrative Law Judge ("ALJ") erred by rejecting the opinions of Sara
4   Bowerman, Ph.D., the only examining doctor who opined on plaintiff's mental impairments.
5   However, the Vocational Expert ("VE") was never asked a hypothetical that incorporated Dr.
6   Bowerman's opinions. Accordingly the ALJ must have an opportunity re-examine plaintiff's
7   residual functional capacity ("RFC"), and the availability of jobs given his RFC.

## I. PROCEDURAL BACKGROUND

Plaintiff applied for disability insurance benefits and for supplemental security income in July 2012. Administrative Record ("AR") 17 (ALJ decision).[3] The disability onset date for both applications was alleged to be October 3, 2008. Id. The applications were disapproved initially and on reconsideration. Id. On January 7, 2014, ALJ Sara A. Gillis presided over a hearing on plaintiff's challenge to the disapprovals. AR 32-56 (transcript). Plaintiff was present and testified at the hearing. Id. Plaintiff was represented by counsel, "Mr. Sheppard," at the hearing. Id. Stephen Schmidt, Vocational Expert ("VE"), testified at the hearing. Id.

On April 29, 2014, the ALJ issued an unfavorable decision, finding plaintiff "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d), and Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A). AR 17-27 (decision), 28-31 (exhibit list). On October 22, 2015, the Appeals Council denied plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. AR 5-9 (decision, additional exhibit & order).

Plaintiff filed this action on December 23, 2015. ECF No. 1; see 42 U.S.C. §§ 405(g), 1383c(3). The parties consented to the jurisdiction of the magistrate judge. ECF Nos. 7, 8. The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the

---

Keffeler, 537 U.S. 371, 375 (2003) ("Title XVI of the Act, § 1381 *et seq.*, is the Supplemental Security Income (SSI) scheme of benefits for aged, blind, or disabled individuals, including children, whose income and assets fall below specified levels . . .").

[3] The AR is electronically filed at ECF Nos. 11-1 to 11-9 (AR 1 to AR 466). The paper version is lodged with the Clerk of the Court. ECF No. 11.

2

Commissioner, have been fully briefed. ECF Nos. 19 (plaintiff's summary judgment motion), 22 (Commissioner's summary judgment motion).

## II.   FACTUAL BACKGROUND

Plaintiff was born on July 20, 1975, and accordingly was 33 years old on the alleged disability onset date, making plaintiff a "younger person" under the regulations. AR 26; see 20 C.F.R §§ 404.1563(c) (age as a vocational factor), 416.963(c) (same). Plaintiff "drowned and was revived at age 8," resulting in cognitive limitations. See AR 442; see also AR 83 (plaintiff was in "special ed due to cognitive limitations stemming from drowning when he was little"), 100 (same). Plaintiff attended special education classes through high school. AR 442.

## III.   LEGAL STANDARDS

"[A] federal court's review of Social Security determinations is quite limited." Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015). The Commissioner's decision that a claimant is not disabled will be upheld "unless it contains legal error or is not supported by substantial evidence." Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014). "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . .'" Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

"'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." Garrison, 759 F.3d at 1009. "While inferences from the record can constitute substantial evidence, only those reasonably drawn from the record will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation and internal quotation marks omitted).

The court reviews the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Rounds v. Commissioner Social Security Admin., 807 F.3d 996, 1002 (9th Cir. 2015); Attmore v. Colvin, 827 F.3d 872, 875 (9th Cir. 2016) ("[w]e cannot affirm … "simply by isolating a specific quantum of supporting evidence").

It is the ALJ's responsibility "to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." Brown-Hunter, 806 F.3d at 492 (internal quotation marks

omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). Thus, in reviewing the Commissioner's decision, this court does not substitute its discretion for that of the Commissioner. See Brown-Hunter, 806 F.3d at 492 ("[f]or highly fact-intensive individualized determinations like a claimant's entitlement to disability benefits, Congress places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency") (internal quotation marks omitted).

The court may review "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Garrison, 759 F.3d at 1010. Finally, the court will not reverse the Commissioner's decision if it is based on "harmless error," meaning that the error "is inconsequential to the ultimate nondisability determination …." Brown-Hunter, 806 F.3d at 492 (internal quotation marks omitted).

## IV.   RELEVANT LAW

Disability Insurance Benefits and Supplemental Security Income are available for every eligible individual who is "disabled." 42 U.S.C. §§ 423(a)(1)(E) (DIB), 1381a (SSI). Plaintiff is "disabled" if he is "'unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment . . ..'" Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

20 C.F.R. §§ 404.1520(a)(4)(i), (b) and 416.920(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, the claimant is not disabled.

Id., §§ 404.1520(a)(4)(ii), (c) and 416.920(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is disabled. If not, proceed to step four.

Id., §§ 404.1520(a)(4)(iii), (d) and 416.920(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

Id., §§ 404.1520(a)(4)(iv), (e), (f) and 416.920(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Id., §§ 404.1520(a)(4)(v), (g) and 416.920(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. 20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or disabled"), 416.912(a) (same); Bowen, 482 U.S. at 146 n.5. However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

## V. THE ALJ's DECISION

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.
>
> 2. [Step 1] The claimant has not engaged in substantial gainful activity since October 3, 2008, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).
>
> 3. [Step 2] The claimant has the following severe impairments: chronic obstructive pulmonary disorder (COPD), status post surgeries on the arms with residual tremor, and history of learning disorder (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. [Step 3] The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5

5. [Residual Functional Capacity] After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except avoiding concentrated exposure to extreme cold and heat; avoiding concentrated exposure to fumes, odors, gases, dust, and environments with poor ventilation; and capable of performing simple unskilled work.

6. [Step 4] The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. [Age] The claimant was born on July 20, 1975 and was 33 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. [Education] The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. [Transferability of job skills] Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. [Step 5] Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 3, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

AR 17-27.

As noted, the ALJ concluded that plaintiff was "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d), and Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A).  AR 27.

## VI.   ANALYSIS

Plaintiff alleges that the ALJ erred by improperly rejecting the opinion of the examining doctor, Sara Bowerman, Ph.D.[4]  Dr. Bowerman opined that plaintiff's "ability to maintain

---

[4] Plaintiff also argues that the ALJ erred by rejecting his testimony. However, plaintiff fails to identify what testimony he is referring to, and instead cites the entirety of his testimony. See ECF No. 19 at 17 ("At the hearing, Mr. Christensen testified about the nature and extent of his condition.  AR 35-54"). In addition, plaintiff fails to explain in what way the RFC fails to (continued…)

6

concentration, attention, and for pacing, tracking, and scanning is *markedly impaired* by his cognitive, mood, and anxiety disorders." AR 449 (emphasis added).  Dr. Bowerman also opined that plaintiff's "ability to respond appropriately to usual work situations (attendance, safety, etc.) is *moderately to markedly impaired* because of his cognitive, mood, and anxiety disorders." AR 449 (emphasis added).[5]

The ALJ gave "little weight" to Dr. Bowerman's opinions because they did not "adequately take into consideration all of the claimant's subjective and objective symptoms, signs, limitations, and severity of condition," and because Dr. Bowerman did not have "access to the claimant's entire medical record and testimony." AR 24.  In her residual functional capacity finding, the ALJ restricted plaintiff to "simple unskilled work." AR 21.[6]

A. Standards

The ALJ may reject the opinion of an examining doctor only for "clear and convincing" reasons, if the opinion is not contradicted by another doctor, or for "specific and legitimate" reasons if it is contradicted. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).  Here the only doctor, other than Dr. Bowerman, to opine on plaintiff's mental impairments and limitations is Tawnya Brode, Psy. D., a state agency reviewing doctor. See AR 83-84 (initial denial), 101-02 (denial on reconsideration).[7]  Dr. Brode found that plaintiff had only "moderate" difficulties in maintaining concentration, persistence or pace, and that plaintiff could perform simple repetitive

---

incorporate the limitations contained in plaintiff's testimony.  Plaintiff's entire argument on this point is simply a lengthy recitation of the applicable legal standards, with no attempt to apply them to the actual facts or testimony in the record.  The court accordingly rejects this argument.  Plaintiff also argues that the ALJ improperly rejected the opinion of "Dr. Larson." ECF No. 19 at 9-11, citing AR 399-407.  However, as the Commissioner notes, the record contains no such opinion at the cited pages nor anywhere else in the record, and no reference to any Dr. Larson.

[5] Dr. Bowerman also found that plaintiff was "mildly" to "moderately" impaired in other areas. AR 449.  However, plaintiff does not challenge the ALJ's decision in regard to those other impairments.

[6] This restriction appears to be based, at least in part, upon the uncontested finding that plaintiff's "ability to understand, remember, and carry out an extensive variety of technical and/or complex job instructions is markedly impaired by his cognitive, mood, and anxiety disorders." AR 449 (Dr. Bowerman); AR 89 ("ability to understand and remember detailed instructions" is "Markedly limited") (Tawnya Brode, Psy. D., agency reviewing doctor).

[7] The "state agency" makes the initial determinations of disability. 20 C.F.R. §§ 404.1613(a), 416.1013(a).

tasks ("SRT"), with no other limitations arising from his mental impairments.  AR 84, 103.

Plaintiff asks the court to review the ALJ's rejection of Dr. Bowerman's opinions under the lower, "specific and legitimate reasons" standard, and therefore the court will examine the rejection based upon that standard.[8]  Under that standard, "the ALJ must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record."  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (internal quotation marks omitted).[9]  To meet this burden, the ALJ must set out "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  Id.

B.  ALJ Rejects Dr. Bowerman's Opinions

The ALJ gave two reasons for rejecting Dr. Bowerman's opinions.  Neither meets the "specific and legitimate" standard.

1.  Symptoms, signs, limitations and severity of condition

The first reason the ALJ gave for rejecting Dr. Bowerman's opinion was:

> Dr. Bowerman's disability statement does not adequately take into consideration all of the claimant's subjective and objective symptoms, signs, limitations, and severity of condition.

The ALJ does not explain what "symptoms, signs, limitations and severity of conditions" she was referring to, nor why in her view, Dr. Bowerman's opinions do not adequately take them into account.  Thus, the first reason given is exactly the type of "boilerplate" rejection of a doctor's opinion that the Ninth Circuit rejects.  See Garrison, 759 F.3d at 1012-13 ("an ALJ errs when he

---

[8] This standard applies where the contrary opinion rested on clinical findings also considered by the examining doctor.  Magallanes, 881 F.2d at 753 ("to the extent that other physicians' opinions rested on clinical findings also considered by Dr. Pont, the ALJ was required to set forth specific, legitimate reasons ... based on substantial evidence in the record") (internal quotation marks omitted).

[9] Magallanes set forth the standard for rejecting a treating doctor's opinion. However, the standard for rejecting an examining doctor's opinion is the same as that for rejecting a treating doctor's opinion.  See Lester, 81 F.3d at 830-31 ("As is the case with the opinion of a treating physician, the Commissioner must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician.  And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and  legitimate reasons that are supported by substantial evidence in the record") (citations omitted).

8

rejects a medical opinion or assigns it little weight while doing nothing more than … criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion"). The ALJ offers no substantive explanation for why Dr. Bowerman's findings do not support her opinions, and the court can discern nothing in the ALJ's recitation of Dr. Bowerman's findings that would explain why the ALJ rejects Dr. Bowerman's opinions. Moreover, the rejection itself is a conclusory, boilerplate statement of rejection, and contains no explanation of any kind.

In addition, the ALJ does not set out any "conflicting clinical evidence," nor does the court find any. As Dr. Brode acknowledged:

> No other Y [psychiatric] evidence in file except for the current CE [Dr. Bowerman] which shows scores are good. CLmt [plaintiff] does have a low GAF and marked limitations in memory and poor scores in Trails.

AR 84.[10] In fact, there is no conflicting evidence of any kind. All the evidence the ALJ relied upon to reject Dr. Bowerman's opinions was also considered by, or was actually collected by, Dr. Bowerman. For example, the ALJ considered plaintiff's activities of daily living, namely, "helping his girlfriend's children get ready for school and to the bus, watching television, eating, and sitting in the yard while his girlfriend did yard work." AR 25. However, these activities were taken, nearly word-for-word, from evidence collected by Dr. Bowerman during her examination of plaintiff. See AR 444 ("During the day he engages in the following activities; helps his girlfriend's children get ready for school and to the bus, watches TV, eats, and sits in the yard while his girlfriend does yard work"). Also, the ALJ considered plaintiff's abilities regarding "personal care," which also was collected by Dr. Bowerman. Compare AR 25 (ALJ: "He alleged he had difficulty caring for his own grooming needs, but was able to prepare his own meals") with AR 444 (Dr. Bowerman: "He has difficulty with caring for his own grooming needs and is able to prepare his own meals").[11]

---

[10] Dr. Brode is the agency doctor whose opinions the ALJ gave "significant weight."
[11] The ALJ also made reference to plaintiff's "social interactions as noted herein," but there is no discussion of any social interactions in the decision (other than what is already identified above in the "activities of daily living"). In addition, the ALJ asserts that plaintiff "was not currently on any mental health medications." AR 24. However, this silently overlooks Dr. Bowerman's (continued…)

2. <u>Medical record and testimony</u>

The second reason the ALJ gave for rejecting Dr. Bowerman's opinions is:

> Dr. Bowerman was also unable to have access to the claimant's entire medical record and testimony.

AR 25. This is not a legitimate reason for rejecting Dr. Bowerman's opinions. First, it is not true that Dr. Bowerman did not have access to the entire *relevant* medical record. That is because Dr. Bowerman *collected* the entire medical record of plaintiff's mental impairments, upon which the state agency doctors, and the ALJ, relied. It is undisputed that plaintiff did not initially base his disability claim on any mental impairments. See, e.g., AR 83 (Dr. Brode: "clmt did not originally allege any mental impairments or LD [learning disorders]"). When plaintiff, on reconsideration, pressed his mental impairment claim, the agency requested the opinion of Dr. Bowerman. Dr. Bowerman interviewed plaintiff, conducted a Mental Status Exam of plaintiff, and administered a battery of tests, and based upon those, offered diagnoses and opinions regarding plaintiff's mental limitations. AR 442-49 (Exh. 7F).[12] The ALJ identifies no other medical records that bear upon plaintiff's mental impairments or limitations. Indeed, as noted above, the agency appears to concede that there are no other such records. See AR 84 ("No other Y [psychiatric] evidence in file except for the current CE [Dr. Bowerman] …").

As for "testimony," the ALJ identifies no testimony that bears upon plaintiff's mental impairments or limitations, nor does the court find any. Plaintiff's testimony was focused entirely on his physical impairments and limitations. Accordingly, there is no reason to reject Dr.

---

statement that plaintiff was taking "Citalopram" for his "depression/anxiety." AR 443. This unexplained omission is important because it is plaintiff's "mood and anxiety disorders," among other things, that are the cause of his mental limitations, according to Dr. Bowerman. See AR 449.

[12] Having requested this opinion, the agency then dismissed it on the ground that it was "based only on a snapshot of the individual's functioning." AR 90, 107. The dismissal is curious because Dr. Bowerman gave her opinion at the request of the agency. Moreover, it is not clear why the agency describes this as a snapshot, since Dr. Bowerman collected, among other things, plaintiff's "Background Information," "Medical Conditions and History of Present Illness," "Psychiatric History," "Social History," "Education History," "Work History," "Arrest History," and "Military History," and based her opinion on this information in addition to the "snapshot" test performance and presentation. AR 442-44, 449.

1   Bowerman's opinions on the ground that she had no access to this testimony.

2                   3.   Other bases for rejecting Dr. Bowerman's opinion

3       The Commissioner argues that even if the ALJ erred in using plaintiff's activities of daily

4   living to reject Dr. Bowerman's opinion, there were other, unchallenged reasons to reject it.

5                   a.   Other notable objective mental findings

6       The Commissioner, citing "AR 25," asserts that the ALJ properly rejected Dr.

7   Bowerman's opinion because of "the lack of other notable objective mental findings." ECF

8   No. 22 at 13. However, the court has examined the ALJ's decision, including the portion at

9   AR 25, and finds no such explanation for rejecting Dr. Bowerman's opinion. It is true that, as

10  discussed above, Dr. Bowerman's examination – which was specifically requested by the agency

11  – is the sole medical record addressing plaintiff's mental impairments. However, the ALJ does

12  not state that this is not enough, nor otherwise comment on the lack of other "mental findings."

13                  b.   Treatment

14      The Commissioner argues that the ALJ properly rejected Dr. Bowerman's opinion

15  because of "the lack of documented treatment for a learning disorder or treatment with

16  medications for any mental condition." ECF No. 22 at 13 (citing AR 25). In fact, Dr. Bowerman

17  reports that plaintiff is taking medication -- Citalopram – for his depression and anxiety, the

18  causes (among others) of his mental limitations. See AR 443. Moreover, plaintiff was in special

19  education classes starting at age 8 and through high school. See AR 442 (Dr. Bowerman:

20  "Background Information"). It is not clear to the court what other "treatment" the Commissioner

21  has in mind for plaintiff's learning disability.

22      C.   Harmless Error Analysis

23      The ALJ's residual functional capacity ("RFC") finding restricted plaintiff to "simple

24  unskilled work." AR 21. The RFC contains no other restrictions based upon plaintiff's mental

25  impairments. The court is unable to say that the ALJ's error is harmless, because including the

26  restrictions stated by Dr. Bowerman could well further restrict, or even eliminate entirely, the jobs

27  that plaintiff can perform. For example, plaintiff's "marked" limitation regarding concentration,

28  persistence and pace could result in his need for "an unreasonable number and length of rest

1  periods ….." See Listings at 85 ¶ 12.00C(3). Such a restriction could eliminate all jobs that
2  plaintiff could perform. See AR 55 (VE testifies that if an individual needed ten-minute breaks,
3  five times a day, there would be no jobs available).

### VII.   Remand for Benefits or for Further Proceedings

As discussed above, the ALJ erred in rejecting Dr. Bowerman's opinions, and that error was not harmless. Accordingly, the court is authorized "to 'revers[e] the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.'" Treichler v. Comm'r of Social Security Admin., 775 F.3d 1090, 1099 (9th Cir. 2014). "[W]here the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004).

More specifically, the district court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. Benecke, 379 F.3d at 593 (citing Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000), cert. denied, 531 U.S. 1038 (2000)).

Under the second step in the remand analysis,[13] the court must "review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and 'all essential factual issues have been resolved.'" Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2016) (quoting Treichler, 775 F.3d at 1101). Under the third step in this analysis, the court should remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Burrell v. Colvin, 775 F.3d 1133, 1141 (9th Cir. 2014) (internal quotation marks omitted). In this case,

---

[13] The first step is satisfied because, as discussed above, the ALJ failed to provide legally sufficient reasons for rejecting Dr. Bowerman's opinions.

even when Dr. Bowerman's opinion is credited, the record is ambiguous about whether plaintiff can perform the jobs identified by the VE.

Plaintiff argues that the VE *did* find that all jobs were precluded. ECF No. 19 at 11-12. According to plaintiff, the VE was asked to assume the limitations asserted by Dr. Bowerman, and concluded that "no work is available." Id. at 11. That is not correct. As the Commissioner notes, the VE was not presented with Dr. Bowerman's hypothetical; he was presented with a much more specific hypothetical, namely, that "such an individual would need, let's say breaks in addition to the regular breaks, about ten minutes at a time, five times a day." AR 55. Based upon that specific hypothetical, the VE concluded that there would be no work available to plaintiff. It is not at all clear that the specifics of plaintiff's hypothetical correspond to the "marked" limitation of concentration, persistence and pace that Dr. Bowerman opined upon.[14]

Because the ALJ did not put Dr. Bowerman's limitations to the VE, nor incorporate them into the RFC, the court does not know if those limitations would eliminate all jobs that plaintiff could perform. The ALJ must have the opportunity to make this determination in the first instance. The matter will accordingly be remanded for further proceedings.

## VIII.   CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 19), is GRANTED;
2. The Commissioner's cross-motion for summary judgment (ECF No. 22), is DENIED;
3. This matter is remanded to the Commissioner for further proceedings consistent with this opinion; and

////

////

////

---

[14] The ALJ did limit plaintiff to simple tasks, and this limitation could possibly account for "moderate" deficiencies in concentration, persistence and pace. See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173 (9th Cir. 2008). It is not clear that this limitation, alone, would properly account for "marked" deficiencies in those areas.

13

4. The Clerk of the Court shall enter judgment for plaintiff, and close this case.

DATED: March 9, 2017

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE